[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Nancy K. Schreiber ("Wife") and Defendant Frank M. Gallagher, a/k/a Frank M. Gallagher, Jr. ("Husband"), intermarried at Bethlehem, Connecticut on March 24, 1984. Other than for a period in 1991 during the Desert Storm crisis when Husband's USMCR unit was activated and he was eventually stationed in Okinawa, and a period in 1994 when Wife was hospitalized in Massachusetts, each party has continuously resided in this State.
The Wife was born on November 21, 1945 and the Husband on April 10, 1949. This was a second marriage for both. There are no children born of this marriage. However, each has three children by a prior marriage. Wife's children are respectively aged 30, 27 and 20. The youngest, a son, presently resides with her at the marital residence. Husband's children are respectively aged 23, 19, and 16.
The marriage has irretrievably broken down. Each party devoted a substantial portion of this trial to an attempt to assess fault on the other. No useful purpose will be served by outlining the parties' respective claims in this regard. Suffice it to say, that after careful consideration of the evidence presented, the Court finds that no fault can be assigned to either party.
The Wife has suffered from certain psychiatric problems diagnosed as post traumatic stress syndrome and major depression, resulting in part from recall of certain childhood events. She was hospitalized on various occasions from 1992 through 1994, including a lengthy stay at the Austen Riggs Center, Stockbridge, Massachusetts, a psychiatric hospital, commencing in February 1994.
The parties have been separated since her discharge from the Danbury Hospital in late September 1992. Shortly thereafter the Wife resumed her maiden name by change of name. They have filed separate income tax returns since 1992.
At the time of the marriage, Husband was employed by Sikorsky Aircraft. He left Sikorsky, and from 1988 to 1990 was a 50% owner (through a corporation) of a fixed base operation at Johnnycake Airport. In 1990 he and his partner established Meriden Aviation Services, Inc. (the "Corporation"), which since that date has conducted a fixed base operation at the Meriden Airport under lease form the City of Meriden. Litigation brought by an unsuccessful CT Page 8844 bidder for that lease is presently pending against the City and the Corporation.
Husband owns 50% of the stock of the Corporation. He has been drawing a salary of $1,400.00 every two weeks. The Corporation is a Subchapter S Corporation for federal income tax purposes. The unaudited financial statements for the years ended December 31, 1994 and 1993 (Defendant Exhibit H) shows respective Stockholders Equity of $6,945 (1994) and $4,543 (1993).
A term loan (the "Corporation Loan") of $260,000 was obtained in connection with the Meriden lease and operation. The loan, now held by First Fidelity Bank, is secured by a security interest in the Corporation's assets and by second mortgages on the residences of the Husband (the marital residence) and his partner. The principal balance of the loan is presently $92,600 (Defendant Exhibit II). However, interest only is presently being paid, payment on principal being in arrears. The Husband testified that he is attempting to renegotiate the loan by extending the time for payment (and presumably by lowering the amount of the monthly installment). Previous recent attempts to increase the loan and to refinance through other lenders have been unsuccessful.
Other than his interest in the marital residence, the only other significant assets of the Husband for which there was credible evidence are two condominiums acquired by him prior to the marriage. These are respectively known as Unit 48-1 and Unit 50-2
Round Tree Drive, Naugatuck, Connecticut. In his most current financial affidavit he values each at $49,000. For Unit 48-1, he shows a mortgage balance of $23,932, leaving an equity of $25,068. For Unit 50-2, he shows a mortgage balance of $21,454, leaving an equity of $27,546. For want of more precise evidence, the Court will accept these figures.
Apparently in 1988 the Husband for some reason (perhaps in contemplation of his Johnnycake Airport venture) conveyed these two Units to the Wife, and she in turn executed Quit-Claim deeds reconveying both to him. These reconveyance deeds, Plaintiff Exhibits 22 and 23, were not recorded until July 21, 1995, during the course of this trial.
The Husband also has an IRA and is entitled to a military pension. A substantial portion of the IRA was used for the Wife's hospital expenses, although the withdrawal and penalty, totalling $11,138, were listed as income to her on her 1992 separately filed CT Page 8845 tax return. The Wife's pension expert's valuation of the present value of the pension benefit accrued during the marriage was grossly exaggerated, as it was clear that the expert did not understand how military pension benefits accrue. Accordingly, the Wife has already shared in Husband's IRA, and no credible evidence of value was presented respecting the pension.
The Wife makes no claim to any of the above-mentioned assets of the Husband. She does make claim to a 50% interest in a $52,500 note and mortgage, since released of record, to Husband from his brother. Plaintiff Exhibit 27. The Court finds no credible evidence that this is a valid and existing obligation.
The Wife is the owner of a condominium known as Unit 50-3, Round Tree Drive, Naugatuck, Connecticut, purchased after the marriage, and apparently located in the same complex as Husband's above-mentioned condominiums. The Husband values this condominium at $49,000 in his current financial affidavit. The Court accepts this valuation. In 1987 title was temporarily transferred to Husband, and mortgaged by him to secure a $33,000 note upon which he is the sole obligor. That mortgage is now in the process of foreclosure. Plaintiff Exhibits 16, 17. The parties agree that title to Unit 50-3 should forthwith be conveyed to Husband. The Wife urges that this conveyance be in return for Husband's conveyance to her of his interest in the marital residence.
The Wife has had an excellent work record. At the time of the marriage, she was employed as an Assistant Manager at a Colonial Bank office. Thereafter, prior to the separation, she performed various office and administrative functions for Husband's business. Since the separation, her tax returns show wages of $18,287 for 1992, adjusted gross income of $33,262 for 1993 and wages of $27,596 for 1994, all notwithstanding her from time to time hospitalization. Defendant Exhibits L, M, N.
The Wife presently delivers mail for the U.S. Postal Service as a part-time employee. In this capacity, she has earned 1995 wages in excess of $7,600. Defendant Exhibit E. In addition she receives at least $300 per month from her son for household expenses, and $1,500 per month disability insurance payment. The latter will cease in December of this year. Until then, she is limited in her earnings so as not to lose the insurance payment.
Doctor Anne F. deGersdorff, Wife's clinical psychologist, testified that it would require about a year before Wife's CT Page 8846 emotional state permitted her to pursue the full-time office employment for which she is qualified. During the trial, however, the Wife appeared articulate, self assured, and in control of herself.
The primary financial issue to be determined by the Court concerns disposition of the marital residence located at 257 Main Street North, Bethlehem, Connecticut. This consists of a 16 1/2 acre undivided parcel of land having 480 feet of lake frontage on which is a nine-room dwelling initially constructed in 1829. The premises were purchased in 1986 for $256,000. Husband and Wife hold title as joint tenants with the right of survivorship. The only expert testimony as to present value was offered by the Wife. Her appraiser valued the premises at $235,000, Plaintiff Exhibit 9, a value which the Court so finds. The appraiser further testified that for a number of valid reasons, the premises are not susceptible to subdivision.
The Husband had sole use of the residence from the time of the 1992 separation until the Fall of 1994. By order of this Court (R. Walsh, J.) dated October 7, 1994 after an evidentiary hearing, exclusive use of the marital residence was awarded to the Wife, the parties to share equally taxes, insurance and principal and interest on the first mortgage. It is understood that as between the parties, the Husband is solely responsible for payment of the second mortgage securing the Corporation Loan.
The Wife requests conveyance to her of full title, and has offered condominium Unit 50-3 in return therefor. The Husband requests that the premises be sold, and until that occurs, the Wife be solely responsible for all expenses. However, he has offered no evidence of marketability in support of his request.
No documentary evidence of the present unpaid balance of the first mortgage was offered by either party. The Court will accept the balance shown on Husband's financial affidavit. Deducting this balance, rounded off to $65,000, from the $235,000 value results in total equity, exclusive of the second mortgage, of $170,000.
The Court has carefully considered the criteria regarding disposition of the marital assets set forth in General Statutes § 46b-81, including but not limited to those pertaining to the causes for dissolution and the contributions of each respecting the marital residence. The Wife did make financial and non-financial contribution to the acquisition, renovation and maintenance. Title CT Page 8847 to the premises was taken in their joint names.
It is fair and equitable that full title be in the Wife, and that she pay to the Husband for the conveyance to her of his interest, in addition to conveyance to him of condominium Unit50-3, the sum of $25,000 either in cash or by delivery of her note and mortgage for said sum in form and substance as hereinafter set forth. The Wife shall be solely responsible for all costs and expenses pertaining to the premises, including the first mortgage, except that Husband shall be solely responsible for the second mortgage.
The remaining financial issues concern the Wife's request for alimony and counsel fees. The Court has carefully considered the criteria regarding awarding of alimony set forth in General Statutes § 46b-82, including but not limited to those pertaining to length of marriage, causes for dissolution and health. The Wife possesses vocational skills and has shown substantial earning capacity. An award of time limited alimony of $200 per week to assist the Wife for the one-year period described by Doctor deGersdorff is in order. Counsel fees of $1,500 to her counsel likewise are in order.
The Court makes no order regarding furnishings and other personal property formerly located at the marital residence, but now in the possession of the Husband. The parties have agreed that the same shall belong to Husband, except such as they agree shall be returned to Wife.
The Court, after reviewing the evidence in conjunction with the pertinent statutory criteria, and evaluating the credibility of the parties, makes the following findings and orders:
1. The Court has jurisdiction.
2. The marriage has broken down irretrievably.
3. The marriage is dissolved.
4. With respect to the real property comprising the marital residence:
 a. The joint tenancy is hereby severed in accordance with General Statutes § 47-14g. CT Page 8848
 b. The Wife shall be responsible and shall pay when due all expenses for mortgages, liens, taxes, assessments and charges, insurance, upkeep and maintenance, including but not limited to the present first mortgage, but excluding the present second mortgage, and shall indemnify and save harmless the Husband from any claim, cost, expense or liability respecting the same.
 c. The Husband shall be responsible and shall pay when due all expenses for the present second mortgage securing the Corporation Loan, and shall indemnify and save harmless the Wife from any claim, cost, expense or liability respecting the same.
 d. The Husband shall convey his interest to the Wife and shall forthwith execute an appropriate Quit-Claim deed of conveyance. Said deed shall be delivered to and held in escrow by Wife's counsel of record in this action, subject to the provisions of this order.
 e. On or before 15 days next after the filing date of this Order, the Wife shall deliver to the Husband in care of his counsel of record in this action either:
(i) The sum of $25,000; or
 (ii) Her promissory note payable to the order of Husband in the principal amount of $25,000 secured by a mortgage on the premises junior only to the present first and second mortgages thereon. The same shall contain the customary clauses including acceleration upon default, costs of collection including reasonable attorneys fees, and prepayment in full or in part at anytime without penalty, and otherwise be in form and substance as the parties may agree. Absent agreement said note and mortgage shall:
 (A) Be due and payable on the earlier to occur of (1) the date of the sale in whole or in part of the premises; (2) 90 days after the premises have been released from the lien of the present second mortgage thereon securing the Corporation Loan; (3) an event of acceleration, including but not limited to the commencement of CT Page 8849 foreclosure proceedings by the holder of the present first mortgage; or (4) five years from the date hereof.
 (B) Bear interest from and after the date when due as herein or therein provided at the statutory rate for money judgments; and
 (C) Shall not be subject to subordination without the consent of Wife.
5. The Wife shall forthwith convey to Husband by an appropriate Quit-Claim deed her interest in condominium Unit 50-3.
6. The Wife is awarded periodic alimony in the amount of $200 per week for a period of one year, consisting of 52 consecutive weekly payments due on Friday of each week commencing on the first Friday after the filing date of this Order. Alimony shall terminate upon the Wife's death, remarriage or cohabitation with any person, and shall otherwise be nonmodifiable.
7. Except as otherwise provided herein, the Wife shall have no claim to or interest in any of the Plaintiff's businesses or business assets, including the Corporation, or other assets shown on his financial affidavit. Husband shall indemnify and save harmless Wife from any and all claim, cost, expense and liability respecting the same, including the Corporation Loan and the present second mortgage on the marital residence securing the same.
8. Counsel fees in the amount of $1,500.00 are awarded to Wife. Husband shall pay the same in full on or before December 31, 1995 directly to Wife's said attorney.
9. Except as provided for herein, each party shall hold the assets shown on such party's current financial statement free and clear of any claim of the other, and shall be responsible for such party's own liabilities shown thereon.
10. As used herein, the obligation to indemnify and save harmless shall include the obligation to defend against any subject claim and to pay all costs including attorney's fees in connection therewith.
11. The parties shall promptly execute and deliver any and all documents necessary or desirable to effectuate the foregoing CT Page 8850 Orders. The closing for the delivery of the documents described in Paragraphs 4 and 5 of this Order shall take place at the office of Wife's said attorney 15 days from the date hereof, or at such other place or date as the parties may agree.
12. No costs are awarded to either party.
Judgment shall enter in accordance herewith.
DAVID L. FINEBERG, J. Superior Court Judge